McKeever *v.* W. M. Roberts Material Company et al., Appellants.

Argued April 13, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE. STADTFELD, PARKER, JAMES and RHODES, JJ.

*James J. Burns, Jr.,* for appellant.

*Fred J. Jordan,* with him *Murray J. Jordan,* for appellee.

Opinion by Rhodes, J., July 15, 1937:

This is a workmen's compensation case in which Laura F. McKeever, widow of deceased, seeks compensation on behalf of herself and minor child. The parties have agreed that the deceased, John McKeever, died March 24, 1932, as the result of injury sustained in an automobile accident at Vanport, Pa., on the same day; that deceased was employed by defendant W. M. Roberts Material Company at a wage of $5 per day and expenses; that the widow and minor son of deceased were dependent upon him for support at the time of his death.

After hearing, the referee found that the deceased was not in the employ of the defendant and was not furthering the interests and affairs of the defendant at the time of the accident and death complained of, and disallowed the claim. Claimant appealed to the Workmen's Compensation Board. Pending hearing on the appeal claimant filed a petition for rehearing, which the board granted. At the rehearing the testimony of two additional witnesses was taken. The referee made an additional finding of fact based upon the testimony taken at the additional hearing, and again found that deceased was not in the employ of defendant, and that he was not engaged in the furtherance of the business or affairs of the defendant at the time of the accident and death of deceased on March 24, 1932. Claimant appealed to the Workmen's Compensation Board.

The board set aside the ninth, sixteenth, twenty-fifth, and twenty-sixth findings of fact, conclusions of law, and disallowance of compensation by the referee, and substituted findings of fact Nos. 9, 16, and 25 in which the board found that deceased was in the employ of defendant on March 24, 1932, the date of the accident and his death, and that at that time he was engaged in the furtherance of the business or affairs of defendant. Upon these findings of fact, an award was made to the

widow and minor child. Defendant appealed to the court below which dismissed defendant's exceptions and entered judgment on the award, from which defendant and its insurance carrier have now appealed.

The questions raised by appellants' assignments of error are: (1) Was deceased still in the employ of defendant on March 24, 1932? (2) if so, was he actually engaged in the furtherance of the business or affairs of the defendant at the time of the fatal accident on March 24, 1932?

Defendant was a copartnership, the copartners being Watson Bowser, Spurgeon Bowser, and W. M. Roberts. The latter was a brother-in-law of deceased, having married deceased's sister. Defendant was interested in obtaining gravel, sand, shale, and stone. Roberts had charge of the field work, hired the men, and supervised the obtaining of leases of property upon which there were deposits of such material. Deceased had been hired by defendant in September, 1931, and his duties consisted of prospecting for gravel, shale, sand, and stone deposits, and securing leases for defendant in order that these materials might be obtained for road building purposes. His employment was without fixed hours or place, except as to a certain territory; and there was no time limit on defendant's employees engaged in this work. Deceased was paid $5 per day when he worked, $3 per day for the use of his car, and $1.50 bonus for each lease that he secured.

Appellants contend that in February, 1932, defendant laid off twelve men, including the deceased; that deceased was thereafter employed only for special cases; that he was not so employed on March 24, 1932; and that the positive testimony of Roberts in this connection must control. Roberts testified: "Q. Was or was he [deceased] not in your employ at that time, on that day [March 24, 1932]? A. He wasn't working

that day. Q. When had he last worked for you previous to that date? A. 15th of March."

Mrs. Edna J. Roberts, sister of the deceased and wife of W. M. Roberts, testified: "Q. You know that Jack was working for the W. M. Roberts Material Company right up to the time of his death, wasn't he? A. No, he wasn't, no. Q. When did he last work? A. On the 15th of March, and that was just a day." This witness also testified that deceased had not been working for "almost four weeks." Mrs. Janet McKeever, sister-in-law of the deceased, also testified: "Q. And his hours of employment were very irregular, weren't they? A. Well, I should say they were, because he wasn't employed." It does not appear that the two last-mentioned witnesses had any direct knowledge of defendant's business. At the time of his death, deceased was living with his mother at her home between New Castle and Ellwood City. W. M. Roberts and his wife, Edna J. Roberts, also resided there. Deceased was separated from his wife, who was employed in a store, at New Castle, of which Mrs. Edna J. Roberts was the manager. The eleven-year-old child of claimant and deceased was living with the deceased at the grandmother's.

The board found: "16th: Considerable controversy arose over who should have the child. The mother, now the claimant, was anxious to have the child and the decedent's mother desired to keep the child. Because of this controversy over the custody of the child the relationship between claimant and the relatives of her deceased husband became strained and prejudiced them against the claimant, affecting the testimony given by them before the Referee."

Mrs. Georgianna Massie, mother of claimant, testified that on March 27, after the funeral of deceased, Roberts said to her: "You know, Mrs. Massie, there is compensation connected with this, and if she

[claimant] don't leave us keep the boy, I will go in to Pittsburgh in the morning and stop the compensation." She replied: "Mr. Roberts, would you do a trick like that to a widow and boy?" And he said: "Absolutely." This conversation Roberts denied, but he admitted that bad feeling existed between the claimant and the McKeever family.

It is for the board to pass on the credibility of witnesses and determine in whom credence shall be placed. It was not obligatory upon the board to believe the testimony of Roberts and the other witnesses as to deceased's employment. In fact, the testimony of deceased's relatives might well be considered as overdone. The board had ample reason to appraise such testimony on the basis that it came from those who "protest too much."

Deceased had no other business or employment than that with defendant, which began in September, 1931. From September 28, 1931, to March 22, 1932, his compensation totaled $1,067.50. Roberts testified that defendant had retained one employee after February, 1932, to wit, W. C. Hay. Defendant's records show that during the month of March the three individuals who were paid for their services were W. C. Hay, William Roberts, and deceased; the last payment to deceased being on March 22d, in the amount of $8. On March 5th deceased was paid $24.

Deceased, during the time of his employment, was assigned a certain territory where there were sand and gravel deposits, and instructed to get all the leases he could in that territory. It is admitted that his last assignment was in the territory of Georgetown, Vanport, and Beaver. It is admitted by defendant that deceased was engaged in that territory on Tuesday, the 15th. Roberts testified: "Over the weekend I asked him what he had done. He said he didn't get anything. I said, 'Leave it drop,' or something like that."

George M. Dawson, a resident of Georgetown, Beaver County, and in the territory to which deceased had been assigned, testified that on Friday, March 18th, deceased had conferred with him relative to leasing a gravel pit on his property. As Dawson refused to sign a lease until he had conferred with his attorney, it was arranged that deceased would meet him the following week, go up to Beaver and see an attorney. Roberts admitted that he had sent deceased into this territory to get whatever available leases there were, but testified that the assignment was confined to one day, to wit, March 15th.

J. C. McCandless, a witness for claimant, testified that he lived at Beaver Falls on and previous to March 24, 1932; that during that month he had received a letter from deceased relative to acquiring his gravel, and stating that deceased would see him in the near future about it. On March 22d deceased called the witness on the telephone, stating that he would be out to see him on the evening of the 24th to talk about the gravel, and that it would be late in the evening when he arrived.

Upon an examination of the testimony of the 23 witnesses in this case, we are satisfied that the evidence was sufficient to establish the fact that deceased was in the employ of the defendant on March 24, 1932, and that the relationship of master and servant existed on that day. The board was justified in making its ninth finding of fact, to wit: "9th: That in February 1932 the defendant had procured a large number of leases and dismissed a number of his field men, but retained the decedent, who was still in the employ of the defendant company on March 24, 1932."

The testimony that deceased was not working for defendant on March 24, 1932, is not conclusive. The board was not obliged to believe the witnesses who so testified, and its finding to the contrary will be

sustained if there are other facts and circumstances in evidence from which employment may be inferred. The testimony was sufficient to justify such inference and to support the board's finding that the relationship of master and servant existed between deceased and defendant on March 24, 1932.

That deceased was fatally injured while in the course of his employment requires but little comment. The board's twenty-fifth finding of fact was as follows: "25th: Taking into consideration all the testimony, and the facts and circumstances surrounding the same, and inferences deducible therefrom, we find that the decedent John McKeever, on March 24, 1932 was at the time of the accident in the course of his employment with the defendant company: That he was furthering the interests and affairs of the defendant company: That he was on his way to fulfill the appointment made by him with J. C. McCandless, of Beaver Falls, Pa., relative to leasing some land of said J. C. McCandless on which were sand and gravel beds."

About 8 a. m. on the day deceased was killed, he told his eleven-year-old son, at the home of the grandmother where they lived: "Well, I am going to work today." Between 1:30 and 2 p. m. he left there. At about dusk, or about 6:30 to 7 p. m., he was seen in Hookstown going east on the Shippingport road to Beaver in his Ford coupe. That road was the one most commonly traveled between Hookstown and Beaver. He was next observed, shortly after dark, by the operator of the ferry between Shippingport and Midland, where he crossed on the ferry to the Midland side, which was the direction he would follow if he was going to Vanport and Beaver. When the accident occurred at Vanport at 8 p. m., deceased's car was headed toward Beaver on highway route 68, which connects with Third Street in Beaver. The scene of the accident was three-tenths of a mile west of Beaver

on the road commonly used in going from Georgetown to Beaver. Vanport is also on the commonly traveled highway between Georgetown and New Castle. A number of blank leases were found in his automobile, including one which had been partially executed, and which he had previously attempted to negotiate. At the time of the accident deceased was proceeding in the direction which he would follow to reach the Mc-Candless home, and he was also on the usual route which he would follow to his own home near New Castle. Claimant's contention that deceased was engaged in defendant's business in his assigned territory on the evening of March 24th is fully sustained by the facts and circumstances which appear in the record. That evening his ultimate destination was to meet Mr. and Mrs. McCandless. He had with him the usual leases of defendant, and was prepared to serve his employer in due course of the trip. He was on the road leading to the place where he had the engagement in defendant's interest; and there is nothing to show that he was on his own or other business. The accident happened at the time and place where the duties and the terms of his employment might require him to go.

It was for the board to weigh or reconcile the conflicting evidence and decide what inferences should be drawn therefrom; and we are all of the opinion that the findings, conclusions, and award of the board, upheld by the court below, are supported by the evidence.

Judgment is affirmed.